UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GISELE ELEK,

                          Plaintiff,

          -v-


INCORPORATED VILLAGE OF MONROE,
VILLAGE OF MONROE POLICE DEPARTMENT;
individually and in their official capacity as Monroe
Village Police Officers – JOSEPH RYLE and DAVID
LEE; individually and in his official capacity as
Supervisor of the Monroe Village Police Department
– CHIEF DOMINIC GUIDICE; ROBERT
MORIARITY, and IRIS MORIARITY,

                          Defendants.

Case No.08-CV-08928 (KMK)

OPINION AND ORDER

Appearances:

Stephen Curtis Jackson, Esq.
New York, New York
*Counsel for Plaintiff*

Bruce Anthony Torino, Esq.
Torino & Bernstein, P.C.
Mineola, New York
*Counsel for Municipal Defendants*

Jeffrey L. Kirsch, Esq.
Eisenberg & Kirsch
Liberty, New York
*Counsel for Defendants Robert and Iris Moriarity*

KENNETH M. KARAS, District Judge:

          Gisele Elek ("Plaintiff") moves to file a Proposed Second Amended Complaint

("PSAC"), pursuant to Federal Rule of Civil Procedure 15, against the Incorporated Village of

Monroe ("Monroe"), the Village of Monroe Police Department ("MPD"), MPD officers Joseph

Ryle, David Lee, and Dominic Guidice, in their individual and official capacities, and private citizens Robert and Iris Moriarity (collectively, "Defendants").  Plaintiff seeks to assert a cause of action for "supervisory liability" against Defendant police officers and the MPD, in addition to claims for malicious prosecution and abuse of process against all Defendants, all under 42 U.S.C. § 1983 ("§ 1983").  Defendants oppose Plaintiff's motion on futility grounds, arguing that Plaintiff has failed to state a claim upon which relief can be granted.  For the reasons stated below, Plaintiff's motion is denied.

## I. Background

Plaintiff filed her initial Complaint on October 17, 2008 (Dkt. No. 1), an Amended Complaint on April 7, 2009 (Dkt. No. 19), and a motion to further amend her Complaint on April 10, 2009, (Dkt. No. 17).  The Amended Complaint contained thirteen causes of action (Am. Compl. ¶¶ 52-115), alleging violations of Plaintiff's First, Fourth, and Fourteenth Amendment rights, pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1986, as well as the commission of various torts under New York common law.

In the Amended Complaint, Plaintiff alleged the existence of a conspiracy between her neighbors, Robert and Iris Moriarity, and the MPD, to harass Plaintiff and to violate her constitutional rights by fabricating criminal charges against her, and by failing to enforce the law on her behalf.  Plaintiff alleged that over an eleven-year period beginning in 1997, Robert Moriarity harassed her on numerous occasions by "trespass[ing] routinely on [her] property using her driveway . . . after being denied permission" (Am. Compl. ¶ 36), "caus[ing] property damage to [Plaintiff's] driveway" (*id.* ¶ 37), and "aggravat[ing] [her] dogs by squirting them with water and blowing a blower in [their] faces with no legitimate purpose," (*id.* ¶ 36).  Plaintiff also alleged that Moriarity "call[ed] the police over 120 times" to file false complaints against

her (*id.* ¶ 28), including unsubstantiated claims that she was "videotaping [Moriarity's] family," (*id.* ¶ 14).  In response to this alleged harassment, Plaintiff claimed that, on the advice and recommendation of the MPD "to undertake surveillance," (*id.* ¶¶ 18, 23), she began videotaping "her property[] and the alleged unlawful activities of defendants . . . directed toward her," (*id.* ¶ 23).  The dispute came to a head on October 22, 2003, when Elek alleged that she was arrested without probable cause pursuant to a warrant charging her with a violation of N.Y. Penal Law § 240.26(3) for "[h]arassment second degree for intentionally videotaping the deponent."  (*Id.* ¶ 19 (internal quotation marks omitted).)  Though not including specific dates or details in her Amended Complaint, Plaintiff vaguely alluded to other incidents in addition to the October 23, 2003 arrest where she was "arrested and summoned to court . . . without probable cause based on fabricated charges of the defendants Robert and Iris Moriarity."  (*Id.* ¶ 27.)  She also claimed that over the eleven-year period the MPD failed to file a "single cross-complaint or charge against the [Moriaritys]" despite the evidence that they harassed Plaintiff.  (*Id.* ¶ 29.)

Plaintiff further alleged a conspiracy to violate her constitutional rights, between Defendant police officers and the Moriaritys, based on the MPD's failure to take Plaintiff's complaints about her neighbors seriously.  (*Id.* ¶¶ 30, 32, 35, 38.)  Plaintiff described two incidents which purportedly supported these allegations: one, in which Defendant Detective[1] Compasso failed to file her August 5, 2005 handwritten complaint against the Moriaritys until October 15, 2005, and only after "repeated calls from [Plaintiff] that she wanted the complaint filed" (*id.* ¶ 30), and the other, in which Defendant Sergeant Laura Foley telephoned Elek and "goad[ed], question[ed], and challenge[d] . . . [her] concerning Moriarity in a . . . conversation

---

[1] The Amended Complaint referred to Compasso alternately as a detective and as a sergeant.  (Am. Compl. ¶¶ 11, 30.)

that was clearly designed to harass plaintiff," (*id.* ¶ 47).  Plaintiff alleged that these incidents of

"harassment" resulted from a "mutual understanding" between the defendant police officers to

"injure . . . and intimidate" Elek in the exercise of her constitutional rights (*id.* ¶ 53), in which

the Moriaritys "[a]ct[ed] jointly," (*id.* ¶ 90-91).

Defendants moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6), or in the alternative, pursuant to Rule 12(c).  (Dkt. Nos. 43, 45.)  On August

5, 2010, the Court held oral argument and granted Defendants' motions to dismiss, holding that

Plaintiff's claims were either time-barred, or, in the case of her section 1983 "[f]ailure to

intercede" claim, failed to state a claim.  (Dkt. No. 57; *see also* Tr. of Oral Arg. 26, 30-32, 35,

Aug. 5, 2010.)  The Court, however, permitted Plaintiff to file a motion to amend with a

Proposed Second Amended Complaint ("PSAC"), and Plaintiff did so on November 30, 2010.

(Dkt. No. 62.)

In the PSAC, Plaintiff seeks to remove most of her original causes of action and several

of the original Defendants.  Plaintiff retains only her § 1983 "[s]upervisory liability" cause of

action (Count VII in the Amended Complaint) (PSAC ¶¶ 24-29), and seeks to add causes of

action for malicious prosecution and abuse of process under § 1983, asserting that Defendants

had no reasonable basis for bringing criminal charges against Plaintiff, and that Defendants

improperly used their positions of authority to bring false charges against her, (*id.* ¶¶ 31, 34).  As

an initial matter, Plaintiff asserts that the MPD promotes a pervasive custom, policy or practice,

which Plaintiff refers to alternately as a "code of silence" or a "wall of silence," where officers

of the department routinely ignore or cover up the misconduct of other officers, and which is

facilitated by negligent hiring, training, and supervision as well as "deliberate indifference in

tolerating" police misbehavior.  (PSAC ¶¶ 8-9.)  The PSAC goes on to detail three separate

4

occasions, two in August 2005 and one in June 2007, in which Plaintiff was "falsely accused" or "wrongly accused" of violating certain laws by the Moriaritys and "arrested" by Defendant police officers, each of whom were allegedly aware of the false nature of the accusations made by the Moriaritys.  (*Id.* ¶¶ 10-12, 14, 17, 19.)  Plaintiff alleges that the charges in each instance were "dismissed" by the Monroe Town Court.  (*Id.* ¶¶ 16, 18, 20.)

## II. Discussion

### A. Standard of Review

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a complaint should be "freely given when justice so requires."  Fed. R. Civ. P. 15(a).  However, "[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "When the plaintiff has submitted a proposed amended complaint, the district judge may review that pleading for adequacy and need not allow its filing if it does not state a claim upon which relief can be granted."  *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991); *see also El-Shabazz v. N.Y. Comm. on Char. & Fitness for the Second Judicial Dep't*, No. 10-CV-2323, 2011 WL 2617857, at *1 (2d Cir. July 5, 2011) (quoting *Ricciuti*, 941 F.2d at 123); *Alaska Laborers Emp'rs Ret. Fund v. Scholastic Corp.*, No. 07-CV-7402, 2011 WL 3427208, at *2 (S.D.N.Y. Aug. 3, 2011) ("[A] court should not grant a plaintiff the right to amend [a complaint] when such amendment . . . could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." (citations and internal quotation marks omitted)). The adequacy of the proposed amended complaint is judged by the same standard as that applied to a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Alaska Laborers,* 2011 WL 3427208, at *2 (quoting *Ricciuti*, 941 F.2d at

123); *Gen. Elec. Capital Fin., Inc. v. Bank Leumi Trust Co. of N.Y.*, No. 95-CV- 9224, 1999 WL

33029, at *5 (S.D.N.Y. Jan. 21, 1999) (citing *Ricciuti*, 941 F.2d at 123).

"On a Rule 12(b)(6) motion to dismiss a complaint, the court must accept a plaintiff's

factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Gonzalez*

*v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008); *see also Ruotolo v. City of New York*,

514 F.3d 184, 188 (2d Cir. 2008) ("We review *de novo* a district court's dismissal of a complaint

pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all

reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)).  In

adjudicating a Rule 12(b)(6) motion, a district court "'confines its consideration to facts stated

on the face of the complaint, in documents appended to the complaint or incorporated in the

complaint by reference, and to matters of which judicial notice may be taken.'"  *Meisel v.*

*Grunberg*, 651 F. Supp. 2d 98, 107 (S.D.N.Y. 2009) (alteration omitted) (quoting *Leonard F. v.*

*Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)).  "The court may . . . consider matters

of which judicial notice may be taken, even if the corresponding documents are not attached to

or incorporated by reference in the complaint." *Munno v. Town of Orangetown*, 391 F. Supp. 2d

263, 268 (S.D.N.Y. 2005).  Courts may take judicial notice of filings in other courts "not for the

truth of the matters asserted in the other litigation but rather to establish the fact of such

litigation and related filings." *Staehr v. Hartford Fin. Servs. Grp.*, *Inc*., 547 F.3d 406, 425 (2d

Cir. 2008) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d

Cir. 2006); *see also Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of

court documents as public records*); Parker v. City of New York*, No. 09-CV-910, 2010 WL

1693007, at *3 n.2 (E.D.N.Y. Apr. 28, 2010) (taking judicial notice of date of arraignment from

state court records in determining whether statute of limitations had run on false arrest claim).

6

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration, citations, and internal quotation marks omitted).  Instead, the Supreme Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563.  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  If a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.*; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

    B. Analysis

        1. Supervisor Liability

    Plaintiff's first cause of action alleges that supervisory personnel within the MPD were aware of misconduct by MPD officers and were aware of the likelihood that such misconduct would be directed toward Plaintiff, yet "these defendants failed to take preventative and remedial measures to guard against the brutality and cover up committed by the defendant officers." (PSAC ¶ 26.)  Plaintiff does not specify who "these defendants" are; however, the Court assumes

Plaintiff is referring to the only Defendant named in the PSAC who appears to occupy a supervisory position, Dominic Guidice, who the PSAC avers is the chief of the MPD.  (PSAC ¶ 3.)[2]

"Supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior."  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).  "To establish the liability of a supervisory official under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional violations."  *Id.* "Supervisor liability under § 1983 'can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information that unconstitutional acts were occurring.'"  *Id.* (quoting *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003)).

The Court finds that the facts alleged in the PSAC are not remotely sufficient to establish a claim against any Defendant for § 1983 supervisor liability.  Setting aside, for a moment, the

---

[2] Plaintiff also appears to attempt to attribute § 1983 supervisor liability to the entire MPD.  (PSAC ¶ 27 ("The Police Department failed to take corrective measures to prevent further and other acts of misconduct by the defendant officers even though they were aware of prior inappropriate behavior when dealing with civilians.").)  However, several courts in this Circuit have noted that "[u]nder New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued."  *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 1999). "[A] police department[] [is] just such [an] administrative arm[] of [its] corresponding municipality, and therefore cannot sue or be sued."  *Howell v. Port Chester Police Station*, No. 09-CV-1651, 2010 WL 930981 (S.D.N.Y. Mar. 15, 2010).  Accordingly, the MPD should be dismissed as a party from this action.

question of whether Plaintiff has adequately alleged (albeit, barely) the necessary underlying

constitutional violation to sustain this claim, Plaintiff has alleged that Defendant Guidice directly

participated in the alleged constitutional violations.  Aside from Plaintiff's general and

conclusory assertions that "supervisory personnel" at the MPD were aware of widespread officer

misconduct and yet took no preventative or corrective action (PSAC ¶¶ 24-28), Plaintiff does

allege that Defendant Guidice "knew that the aforesaid allegations [made by the Moriaritys

against Plaintiff] were false and without merit" (*id.* ¶ 11), that the Moriaritys "conspired with []

Guidice to wrongly cause plaintiff to be arrested and maliciously prosecuted" (*id.* ¶ 12), and that

"Defendant Guidice directed defendant police officers and other police officers to arrest plaintiff

even though he knew that the allegations made by defendants Robert and Iris Moriarity were

false," (*id.*).  Plaintiff has, therefore, alleged Defendant Guidice's personal involvement in the

complained-of actions, as required.

Plaintiff must also, however, allege the existence of an underlying constitutional

violation, and it is not clear from the PSAC what that constitutional violation is.  Plaintiff does

claim, in reference to one of the incidents that form the basis for the PSAC, that she was

subjected "to false arrest, false imprisonment, malicious prosecution, abuse of process and

violations of [her] state and federal constitutional rights."  (PSAC ¶ 11.)  The Court, construing

the PSAC liberally, understands Plaintiff to be asserting her § 1983 supervisor liability claim

based on all of the aforementioned alleged constitutional violations.  However, as the Court

noted when it dismissed the Amended Complaint, Plaintiff's claims for false arrest and false

imprisonment under § 1983 are time-barred; accordingly, Plaintiff may not assert a claim for

supervisor liability based on these alleged constitutional violations.  *See Gonzalez v. Wright*, 665

F. Supp. 2d 334, 356 (S.D.N.Y. 2009) ("The dismissal of the Section 1983 claims against the

defendants actually involved [as barred by the applicable statutes of limitations] mandates dismissal of the supervisory liability claim . . . as well.").[3]  Additionally, as discussed in more detail below, Plaintiff has not established a constitutional violation based on her allegations of malicious prosecution or abuse of process.  Therefore, because Plaintiff has not established any underlying constitutional violation, she cannot state a claim for § 1983 supervisor liability.  *See Bryant v. Wright*, No. 09-CV-2456, 2010 WL 3629443, at *9 n.1 (S.D.N.Y. Aug. 31, 2010) ("Absent an underlying constitutional violation, there is no cognizable claim for supervisor liability." (internal quotation marks omitted)); *D'Angelo-Fenton v. Town of Carmel*, 470 F. Supp. 2d 387, 399 (S.D.N.Y. 2007) (dismissing plaintiff's § 1983 supervisor liability claim because plaintiff had not established any underlying constitutional violation).

---

[3] The Supreme Court has held that the statute of limitations for federal claims under 42 U.S.C. § 1983  "is that which the State provides for personal-injury torts."  *Wallace v. Kato*, 549 U.S. 384, 387 (2007).  Accordingly, federal courts in New York apply the New York three-year statute of limitations for personal injury actions to § 1983 claims.  *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) ("The statute of limitations applicable to claims brought under . . . [§] 1983 in New York is three years.").  Although § 1983 draws the statute of limitations period from state law, the question of when a § 1983 claim accrues is a matter of federal law.  *See Wallace*, 549 U.S. at 388 ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law."); *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007) (same).  Specifically, for § 1983 false arrest and imprisonment claims, the Supreme Court has held that the statute of limitations begins to run when the plaintiff is "held pursuant to [legal] process – when, for example, he is bound over by a magistrate or arraigned on charges."  *Wallace*, 549 U.S. at 389 (emphasis omitted); *see also Lynch v. Suffolk Cnty. Police Dep't, Inc*., 348 F. App'x. 672, 675 (2d Cir. 2009) ("[T]he statute of limitations begins to run when the alleged false imprisonment ends." (internal quotation marks omitted)); *Poux v. Cnty. of Suffolk*, No. 09-CV-3081, 2010 WL 1849279, at *8 (E.D.N.Y. May 4, 2010) (same).  The Amended Complaint contained causes of action for false arrest under § 1983, which the Court determined were time-barred, because the initial Complaint was filed on October 17, 2008, but each of the alleged "arrests" occurred over three years prior to that date.

2. Malicious Prosecution

Plaintiff's second cause of action, for malicious prosecution under § 1983, alleges that

Defendants targeted Plaintiff even though they "knew that there was no basis for the institution

and prosecution of criminal charges against" her.  (PSAC ¶ 31.)[4]  "The elements of a malicious

prosecution claim under New York law are '(1) that the defendant initiated a prosecution against

the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could

succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in

the plaintiff's favor.'" *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000)

(quoting *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 417 (2d Cir. 1999)).  "In order to

allege a cause of action for malicious prosecution under § 1983, [Plaintiff] must assert, in

addition to the elements of malicious prosecution under state law, that there was (5) a sufficient

post-arraignment liberty restraint to implicate [] [P]laintiff's Fourth Amendment rights."  *Id.*  As

the Second Circuit has explained:

> The Fourth Amendment right implicated in a malicious prosecution actions is the
> right to be free of unreasonable seizure of the person-i.e., the right to be free of
> unreasonable or unwarranted restraints on personal liberty.  A plaintiff asserting a
> Fourth Amendment malicious prosecution claim under § 1983 must therefore
> show some deprivation of liberty consistent with the concept of seizure.

*Id.* (internal quotation marks omitted).

While a plaintiff in a malicious prosecution action must establish that a defendant lacked

---

[4] Unlike false arrest claims, claims for malicious prosecution, which are governed by the same three-year statute of limitations, do not accrue until criminal proceedings have terminated in a plaintiff's favor.  *See Heck v. Humphrey*, 512 U.S. 477, 489 (1994); *see also Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir. 1995) (noting that the statute of limitations for a § 1983 malicious prosecution claim "starts to run only when the underlying criminal action is conclusively terminated").  Each of the dispositions which serve as the basis for Plaintiff's malicious prosecution claim occurred within three years of the filing of the initial Complaint, and thus would not be time-barred.

probable cause, "[a] conviction establishes the existence of probable cause which, even when the conviction is reversed on appeal, becomes a rebuttable presumption. . . . [which] can be rebutted only by a showing that conviction itself was a result of fraud, perjury, or other unethical acts on the part of the defendant." *Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 228 (S.D.N.Y. 2006) (citation and internal quotation marks omitted). "The existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2010).

In her Proposed Second Amended Complaint, Plaintiff details three separate occasions on which she claims Defendants improperly initiated criminal charges against her. The first incident occurred on August 6, 2005, when Plaintiff claims she was falsely arrested and detained, and charged with harassment in the second degree; the charges, Plaintiff claims, were ultimately "dismissed" on May 1, 2007. (PSAC ¶¶ 10-16.) However, court documents show that Plaintiff was in fact found guilty of harassment in the second degree in a non-jury trial in the Justice Court of the Town of Monroe on April 17, 2007, and the conviction was affirmed on appeal. *See People v. Elek*, No. 2007-CR-788, 2008 WL 2764051, at *1 (N.Y. App. Term July 2, 2008).[5] As noted above, a conviction establishes the existence of probable cause, which is a

---

[5] Detective James Franklid, a named defendant in the Amended Complaint, filed an Affidavit stating that Plaintiff was found guilty of harassment in the second degree following a bench trial, and that Plaintiff lost her appeal. (Aff. of James Franklid ("Franklid Aff.") ¶ 7(d).) Plaintiff thereafter pled guilty to a harassment charge stemming from another incident, and paid a fine which also covered the fine for the case she lost and appealed. (*Id.* ¶ 7(e).) Both cases were "disposed" on May 1, 2007, after Plaintiff paid the fine. Of course, the Court does not deny Plaintiff's motion because of this affidavit, but Monroe Town Court documents, of which the Court may take judicial notice, demonstrate that the case in which Plaintiff was convicted was "disposed" on May 1, 2007. The Court reminds Plaintiff's counsel of his Rule 11 obligations, and of the possibility of sanctions where pleadings contain untruthful or misleading information.

complete defense to a malicious prosecution claim, and Plaintiff has made no allegation that the conviction was the result of fraud, perjury, or other unethical conduct on the part of Defendants. Therefore, Plaintiff may not base her § 1983 malicious prosecution claim on this incident.

Regarding the incidents on August 8, 2005, and June 23, 2007, Plaintiff claims that she was falsely accused of violating a water restriction ordinance, and of harassment of the Moriaritys, respectively, and that criminal charges were brought against her in each instance, which were ultimately dismissed.  (PSAC ¶¶ 17-20.)  In neither instance does Plaintiff claim that she was arrested or detained, that her travel was restricted, or that she was required to appear in court on multiple occasions.[6]  In fact, the PSAC admits that the summons in the second incident was dismissed.  (*Id.* ¶ 20.)  Therefore, Plaintiff has failed to satisfy the fifth element of a malicious prosecution action under § 1983, that she suffered "a sufficient post-arraignment liberty restraint" that implicated her Fourth Amendment rights.  *Rohman*, 215 F.3d at 215; *see also Burg v. Gosselin*, 591 F.3d 95, 101 (2d Cir. 2010) (joining majority of circuit courts "in holding that a pre-arraignment, non-felony summons requiring no more than a later court appearance does not constitute a Fourth Amendment seizure").  Plaintiff has failed to allege facts that would plausibly suggest that she suffered any post-arraignment liberty restraint with respect to these two incidents.  Accordingly, because Plaintiff may not ground her proposed malicious prosecution claim on any of the three incidents outlined in the PSAC, Plaintiff's motion to amend is denied to the extent that she seeks to include this claim in a Second Amended Complaint.

---

[6] Again, while not a basis to deny Plaintiff's motion, the Court notes that Detective Franklid's Affidavit confirms that Plaintiff was not arrested on June 23, 2007.  (Franklid Aff. ¶ 9.)

### 3. Abuse of Process

The third cause of action in the PSAC is for abuse of process under § 1983.  Specifically, Plaintiff claims that "[D]efendants used their positions of authority to institute and perpetuate false and misleading charges against [P]laintiff" and that these actions "constituted abuse of process."  (PSAC ¶ 34.)  In order to establish a claim for abuse of process, which supports liability under § 1983, Plaintiff must demonstrate that Defendant: "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."  *Savino v. City of New York*, 331 F.3d 63, 70 (2d Cir. 2003) (internal quotation marks omitted).  "The pursuit of a collateral objective must occur after the process is issued; the mere act of issuing process does not give rise to a claim."  *Lopez v. City of New York*, 901 F. Supp. 684, 691 (S.D.N.Y. 1995) (citing *PSI Metals v. Firemen's Ins. Co.*, 839 F.2d 42, 43 (2d Cir. 1988)).  In other words, Plaintiff "must claim that [Defendants] aimed to achieve a collateral purpose beyond or in addition to [her] criminal prosecution."  *Savino*, 331 F.3d at 77.

Plaintiff has failed to establish a claim for abuse of process, as the PSAC is completely devoid of any allegations concerning any "collateral objective" that Defendants may have had in instituting criminal charges against Plaintiff.  Plaintiff has plainly failed to plead the elements of this cause of action.  Therefore, the Court denies Plaintiff's motion to amend to the extent that she seeks to pursue an abuse of process claim.

III. Conclusion

For the reasons stated herein, Plaintiff's motion to amend is denied.[7]  The Clerk of the

Court is respectfully directed to terminate the pending motion (Dkt. No. 62), and to close this

case.[8]


SO ORDERED.

Dated:        White Plains, New York
              September 26, 2011

                                           KENNETH M. KARAS
                                           UNITED STATES DISTRICT JUDGE


---

[7] The Court presumed that Plaintiff's malicious prosecution and abuse of process claims
were brought pursuant to § 1983.  To the extent that Plaintiff intended these causes of actions to
be state common law claims, the Court declines to exercise supplemental jurisdiction over them,
pursuant to 28 U.S.C. § 1367(c)(3), and denies Plaintiff's motion without prejudice to allow
Plaintiff leave to file these claims in state court.  *See Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d
118, 122 (2d Cir. 2006) (noting that decision whether to exercise supplemental jurisdiction lies
within the discretion of the district court).

[8] Because the Court dismissed the Amended Complaint, and because Plaintiff's second
bite at the apple has proven fruitless, the Court dismisses this action. *See In re Worldcom, Inc.
Sec. Litig.*, No. 03-CV-6225, 2004 WL 2889974, at *8 (S.D.N.Y. Dec. 15, 2004) ("Under Rule
15(a) plaintiffs have no right to amend their pleadings a second time." (quoting *Denny v. Barber*,
576 F.2d 465, 471 (2d Cir.1978))); *see also In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d
351, 390 (S.D.N.Y. 2003) ("[P]laintiffs have no right to a second amendment – a third bite at the
apple – particularly where, as here, they . . . were advised by the Court, prior to amending their
complaints, of certain pleading deficiencies and what the Court would require.").

15

Service List (via ECF):

Stephen Curtis Jackson, Esq.
350 Fifth Avenue
New York, NY 10118
(212) 643-2394
Fax: (212) 239-6900
Email: stevenjacklaw@aol.com
*Counsel for Plaintiff*

Bruce Anthony Torino, Esq.
Torino & Bernstein, P.C.
200 Old Country Road, Suite 220
Minealo, NY 11501
(516) 747-4301
Fax: (516) 747-5956
Email: bruce.torino@torinoandbernstein.com
*Counsel for Defendants*

Jeffrey L. Kirsch, Esq.
Eisenberg & Kirsch
25 Darbee Lane
Post Office Box 715
Liberty, NY 12754
(845) 292-4412
Fax: (845) 292-1636
Email: jkirsch@ekclaw.com
*Counsel for Defendants*